# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

**GERALD BERNARD JACKSON,**　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　**Plaintiff,**　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　**v.**　　　　　　　　　　　　　　:　　**CIVIL ACTION FILE NO.**
　　　　　　　　　　　　　　　　　　　:　　**1:16-cv-03457-ODE-AJB**
**NANCY A. BERRYHILL,**　　　　　　　:
*Acting Commissioner of*　　　　　　:
*Social Security,*　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　**Defendant.**　　　　　　　:

## UNITED STATES MAGISTRATE JUDGE'S
## FINAL REPORT AND RECOMMENDATION
## <u>IN A SOCIAL SECURITY DISABILITY ACTION</u>

Plaintiff Gerald Bernard Jackson brought this action pursuant to §§ 205(g) and

1631(c) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain

judicial review of the final decision of the Commissioner of the Social Security

Administration ("the Commissioner") denying his application for Social Security

Disability Insurance Benefits ("DIB") and Supplemental Security Income benefits

("SSI").[1] The action was referred to the undersigned for Report and Recommendation

---

[1]　　Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*, provides
for supplemental security income for the disabled.  Title II of the Social Security Act
provides for federal disability insurance benefits.  42 U.S.C. § 401, *et seq.*  Title XVI
claims are not tied to the attainment of a particular period of insurance eligibility.
*Baxter v. Schweiker*, 538 F. Supp. 343, 350 (N.D. Ga. 1982).  The relevant law and

("R&R") pursuant to 28 U.S.C. § 636(b) and this Court's Local Rule 72.1. For the reasons set forth below, the undersigned **RECOMMENDS** that the District Judge **AFFIRM** the final decision of the Commissioner.

## I.     PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on August 5, 2008, alleging disability commencing on July 6, 2008. [Record (hereinafter "R") 156-66]. Plaintiff's applications were denied initially and on reconsideration. [*See* R90-97, 99-106]. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). [R116-17]. An evidentiary hearing was held on October 5, 2010. [R25-73]. The ALJ issued a decision on May 10, 2011, denying Plaintiff's application on the ground that he had not been under a "disability" at any time from the onset date through the date

---

regulations governing the determination of disability under a claim for DIB are nearly identical to those governing the determination under a claim for SSI. *Wind v. Barnhart*, 133 Fed. Appx. 684, 690 n.4 (11th Cir. June 2, 2005) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 n.4 (11th Cir. 1986)). Title 42 U.S.C. § 1383(c)(3) renders the judicial provisions of 42 U.S.C. § 405(g) fully applicable to claims for Supplemental Security Income. In general, the legal standards to be applied are the same regardless of whether a claimant seeks DIB, to establish a "Period of Disability," or to recover SSI. However, different statutes and regulations apply to each type of claim. Many times parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this Report should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

2

of the decision. [R7-18]. Plaintiff sought review by the Appeals Council, and the Appeals Council denied Plaintiff's request for review on November 16, 2011, making the ALJ's decision the final decision of the Commissioner. [R1-6]. Plaintiff then filed an action in this Court in January 2012, seeking review of the Commissioner's decision. *Jackson v. Astrue*, Civ. Action No. 1:12-cv-00056-RGV (N.D. Ga.), ECF Nos. 1, 7. Following briefing, the Court reversed the decision of the Commissioner on March 18, 2013, and remanded the case for further proceedings. *Id.*, ECF No. 19.

Pursuant to the Order entered by the District Court, the Appeals Council directed the Commissioner to offer Plaintiff a new hearing, take any action needed to complete the administrative record, and issue a new decision. [R765]. A second evidentiary hearing was held on August 12, 2015, before a different ALJ. [R659-707]. The ALJ issued an unfavorable decision on September 25, 2015, again denying Plaintiff's application on the ground that he had not been under a "disability" at any time from the onset date through the date of the decision. [R625-44]. Plaintiff sought review by the Appeals Council, and the Appeals Council denied Plaintiff's request for review on July 18, 2016, making the ALJ's decision the final decision of the Commissioner. [R586-93].

Plaintiff then initiated the present action in this Court on September 15, 2016,

3

seeking review of the Commissioner's most recent decision. [Doc. 1]. The answer and transcript were filed on January 3, 2017. [*See* Docs. 8, 9]. On April 20, 2017, Plaintiff filed a brief in support of his petition for review of the Commissioner's decision, [Doc. 18]; on May 22, 2017, the Commissioner filed a response in support of the decision, [Doc. 19]; and on June 5, 2017, Plaintiff filed a reply brief in support of his petition, [Doc. 20]. The matter is now before the Court upon the administrative record, the parties' pleadings, and the parties' briefs, and it is accordingly ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).[2]

## II.    STANDARD FOR DETERMINING DISABILITY

An individual is considered disabled for purposes of disability benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do

_____

[2]     Neither party requested oral argument. (*See* Dkt.).

previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner. The claimant bears the primary burden of establishing the existence of a "disability" and therefore entitlement to disability benefits. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a). The Commissioner uses a five-step sequential process to determine whether the claimant has met the burden of proving disability. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The claimant must prove at step one that he is not undertaking substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments that significantly limits his ability to perform basic work-related activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, if the impairment meets one of the listed impairments in Appendix 1 to Subpart P of Part 404 (Listing of Impairments), the claimant will be considered disabled without consideration of age, education, and work experience.

5

*See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  At step four, if the claimant is unable to prove the existence of a listed impairment, he must prove that his impairment prevents performance of past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At step five, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  The Commissioner must produce evidence that there is other work available in the national economy that the claimant has the capacity to perform. *Doughty*, 245 F.3d at 1278 n.2.  To be considered disabled, the claimant must prove an inability to perform the jobs that the Commissioner lists.  *Id.*

If at any step in the sequence a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Despite the shifting of burdens at step five, the overall burden rests on the claimant to prove that he is unable to engage in any substantial gainful activity that exists in the national economy.  *Doughty*, 245 F.3d at 1278 n.2; *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute*

AO 72A
(Rev.8/8
2)

*on other grounds by* 42 U.S.C. § 423(d)(5), *as recognized in Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1214 (11th Cir. 1991).

## III.   SCOPE OF JUDICIAL REVIEW

A limited scope of judicial review applies to a denial of Social Security benefits by the Commissioner.  Judicial review of the administrative decision addresses three questions:  (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues.  *Washington v. Astrue*, 558 F. Supp. 2d 1287, 1296 (N.D. Ga. 2008); *Fields v. Harris*, 498 F. Supp. 478, 488 (N.D. Ga. 1980).  This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  If substantial evidence supports the Commissioner's factual findings and the Commissioner applies the proper legal standards, the Commissioner's findings are conclusive.  *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (per curiam); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986)  (per curiam); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

7

"Substantial evidence" means "more than a scintilla, but less than a preponderance." *Bloodsworth*, 703 F.2d at 1239.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and it must be enough to justify a refusal to direct a verdict were the case before a jury.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239.  "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (per curiam).  Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision.  *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991).  In contrast, review of the ALJ's application of legal principles is plenary.  *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995); *Walker*, 826 F.2d at 999.

## IV.    ADMINISTRATIVE DECISION

Plaintiff alleges disability due to chronic heart disease, high blood pressure, asthma, depression, arthritis, a rotator-cuff injury, back pain, leg pain, paranoia, diabetes, and the residual effects of a gunshot wound and a stab wound.

8

[R177, 664, 988, 1004, 1033].  Plaintiff states that he has pain in both shoulders, his chest, his lower back, and his right leg and that he still has a bullet in his leg that causes him pain.  [R670-71].  At the time of his hearing, Plaintiff rated his pain at seven on a scale of zero to ten, even with medication.  [R672].  Plaintiff also stated that he has issues with paranoia relating to when he was shot and stabbed, that he has difficulties trusting people, and that he does not like to be around people as a result of those issues.  [R682].  Plaintiff testified that every day, he sees and hears voices and shadows and has flashbacks to the stabbing and shooting incidents.  [R683, 687].

Plaintiff states that his difficulties prevent him from working because they affect his memory, his concentration, and his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, see, complete tasks, understand, follow instructions, use his hands, and get along with others.  [R689, 1038].  He estimates that he could sit for about thirty minutes at a time, stand for about fifteen minutes at a time, walk about a couple of blocks before having to stop, and lift about ten or twenty pounds with his right arm, and he states that he walks at a very slow pace.  [R672-73].  He also reports that numbness prevents him from picking up things with his right hand; that he does not drive; that he cannot cook, shop, wash dishes, do laundry, or perform any housework;

9

and that he needs help with bathing and clothing himself since he is not able to reach all of his body.  [R665, 673-74].

In the decision issued after the second hearing, the ALJ made the following findings of fact and conclusions of law:

1.  The claimant meets the insured status requirements of the Social Security Act through September 30, 2010.

2.  The claimant has not engaged in substantial gainful activity since July 6, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: chronic heart failure; hypertension; obesity; right shoulder pain; polysubstance abuse in remission; major depressive disorder; unspecified personality disorder; various arthralgias and arthritis; left rotator cuff tear; and right knee swelling and pain (20 CFR 404.1520(c) and 416.920(c)).

. . .

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

. . .

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except he can

10

only occasionally push or pull with either of the upper extremities; he can only occasionally overhead reach with the right upper extremity and never with the left upper extremity; he should never climb ladders, ropes, or scaffolding; may occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl; and should avoid all exposure to hazardous machinery and unprotected heights; he can perform work limited to simple, routine, and repetitive tasks; in a work environment free of fast paced production requirements; involving only simple, work-related decisions; with few, if any, work place changes; with only occasional interaction with the public and co-workers; and only occasional supervision of a supportive, non-threatening nature.

. . .

6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

. . .

7.   The claimant was born on October 4, 1966 and was 41 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.   The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-4 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant

AO 72A
(Rev.8/8
2)

> numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
> . . .
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from July 6, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[R627-44].

The ALJ explained that he found Plaintiff's asthma, diabetes, and hypertensive renal disease to be non-severe impairments because medical records described the asthma as "not really supported by the record" and showed that Plaintiff had not had an asthma attack since early 2011; indicated that Plaintiff had been diagnosed with diabetes in January 2014 and that it was under control by the end of that same year; and described Plaintiff's hypertensive renal disease as asymptomatic in a December 2010 medical interrogatory.  [R628].

The ALJ also explained that Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms he alleged but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible.  [R632].  As to Plaintiff's physical impairments, the ALJ stated that the medical record did not support Plaintiff's allegations of disabling

12

symptoms, as his recent records indicated that his cardiovascular issues were stable; in a follow-up taking place in January 2014, he denied chest pain and shortness of breath; he stated in the record that he only experienced chest pain when he was not consistent with medication use; no cardiovascular testing was recommended after January 2014; it was noted in May 2014 that his left ventricular function had recovered and he was able to walk two to three blocks without any issues; Plaintiff's visits to the emergency room during the relevant period were found not to be cardiac related and there was some indication that cocaine use could have been the cause of the pain; Plaintiff stated in December 2012 that he was fully independent with his activities of daily living and was able to play outside with his children; there were no medical records that corroborated Plaintiff's testimony of dizziness and headaches related to hypertension; there were records showing that Plaintiff's hypertension was well-controlled with medication; recent records showed that Plaintiff reported extensive relief from pain and symptoms in his left shoulder with consistent medication use and occupational therapy; shoulder treatment had been conservative in nature and for the majority of time, Plaintiff had taken only over-the-counter medication to control his pain; his most recent consultative examination indicated no objective signs of limitation in the left shoulder besides some mild arthritis; an x-ray study from 2012 of Plaintiff's right shoulder did

13

not reveal abnormalities; there was little objective evidence to support Plaintiff's complaints of back and knee pain, no indication of an inability to ambulate effectively, and only mild degenerative changes; and Warner Wood, M.D., noted "fairly extreme symptom exaggeration regarding his physical limitations" during a consultative examination conducted in February 2015. [R636-37]. Additionally, the ALJ explained that he found Plaintiff to be no more than mildly restricted in his ability to perform activities of daily living based on his reports during a consultative examination with J.F. DeGroot, Ph.D., taking place on March 10, 2015, where Plaintiff told Dr. DeGroot that he was able to independently dress himself, select appropriate clothing for weather and situation, use the toilet, and vacuum the rugs, denied having any problems counting money or managing bank accounts, had a driver's license, was able to use public transportation, and enjoyed watching television and reading, and based on the March 2012 opinion of consultative examiner Valerie Besses, Psy. D., in which Dr. Besses opined that Plaintiff's reports to her at that time that he was essentially incapable of performing any household or self-care tasks were a "gross underestimate" of Plaintiff's functional capabilities. [R629, 637]. The ALJ also explained that he gave "significant weight" to the opinion of consultative examiner Tiffany Lee, M.D., who found that Plaintiff should avoid concentrated areas of toxins and inhalants because of his history

14

of asthma, found that he had a decreased range of motion in his back and left upper extremity, and advised him to avoid activities that require heavy lifting and excessive use of his left upper extremity for overhead reaching, pushing, or pulling, [R634, 640]; that he gave "significant weight" to the opinion of consultative examiner Dr. Wood, who found minimal degenerative osteoarthritis of the cervical spine and mild degenerative arthritis of the left shoulder, noted that Plaintiff's complaints of pain appeared to be exaggerated, and opined that Plaintiff should be able to do between light and medium work, [R636, 640]; that he gave "little weight" to the 2010 opinion of T. Salman, M.D., who opined that Plaintiff could not perform any exertional activity for more than twenty or thirty minutes, as the record from 2008 to 2010 revealed few complaints, mostly routine care, and periods where Plaintiff was non-compliant with medication, [R641]; and that he gave "more weight" to the 2010 opinion of independent medical examiner James Anderson, M.D., who limited Plaintiff to light and sedentary work but noted that medical improvement would be expected with medical compliance, diet, and exercise, [R641].

As to Plaintiff's mental limitations, the ALJ explained that he found that the medical evidence of record did not support Plaintiff's allegations of memory and focus issues, reports of hallucinations, or reports of extreme paranoia due to past traumatic

events.  [R640].  The ALJ noted that Plaintiff's treatment records indicated that his depression was found to be mild initially and related to the death of his mother, that he sporadically sought treatment and was not consistently on medication, and that recent records showed that he had improved with therapy and medication.  [R640].  He also remarked that although Plaintiff's records contained a diagnosis of post-traumatic stress disorder ("PTSD"), the diagnosis was based solely on Plaintiff's own reports, neither Dr. Besses nor Dr. DeGroot found his symptoms to fit the definition of PTSD, there was no indication of stress when Plaintiff discussed past traumatic events, he was not observed to show outward signs of PTSD, and Dr. DeGroot opined that Plaintiff's paranoia appeared to be depression-related rather than PTSD-related. [R640]. The ALJ explained that Plaintiff's allegations of hallucinations were found not to be valid, as Plaintiff was unable to specifically describe what he saw or heard, he was not observed to be responding to any outside stimuli, and no delusions were noted.  [R640].  The ALJ further stated that in crafting the social limitations included in the RFC, he had considered Dr. DeGroot's opinion that Plaintiff would likely have problems getting along with others, had considered Dr. Besses's opinion that Plaintiff had sufficient ability to interact with co-workers and supervisors, and gave some credence  to Plaintiff's allegations of isolation and paranoia in large crowds.  [R629].  The ALJ

16

additionally cited examination notes from Dr. DeGroot and Dr. Besses showing that Plaintiff's symptoms indicated that he had no significant memory impairments, was able to follow simple instructions, had good judgment and insight, and had no more than the moderate restrictions in concentration, persistence, and pace that were accommodated in the RFC.  [R629-30, 640].  The ALJ also explained that he gave "significant weight" to the opinions of Dr. Besses and Dr. DeGroot, as there was nothing in Plaintiff's mental-health treatment that differed from the findings, [R641], and that he gave "little weight" to the opinion of a treating physician from Grady who opined that Plaintiff had marked restrictions in activities of daily living and social functioning, that he had moderate difficulties in concentration, and that his symptoms would interfere with his ability to work and would be disabling, based on Dr. Besses's and Dr. DeGroot's findings of malingering and symptom exaggeration and because nothing in Plaintiff's treatment records indicated that Plaintiff was as limited as the Grady doctor opined, [R642].

The ALJ also stated that he found Plaintiff's credibility questionable because Plaintiff made inconsistent statements with regard to cocaine use, [R636]; during the consultative examination conducted by Dr. Wood, Plaintiff was noted to have breathed heavily, "prayed from time to time," and almost continually sighed, grunted, and

AO 72A
(Rev.8/8
2)

groaned when simply lying on the examination table without being examined, and Dr. Wood noted that there were no objective findings on examination or in imaging to support the complaints, [R636-37]; Dr. Besses described Plaintiff as uncooperative and exaggerating his symptoms, [R640]; and Dr. DeGroot noted that Plaintiff was not putting forth his best effort, [R640].

Finally, the ALJ explained that because he determined that Plaintiff was capable of less than the full range of light work, he engaged a vocational expert ("VE") to provide testimony as to the working capabilities of a hypothetical person of Plaintiff's age, education, work experience, and residual functional capacity. [R643]. The ALJ further stated that the VE testified that such a person would be able to perform the requirements of representative occupations such as advertising material distributor, escort vehicle driver, and marker; that the ALJ determined that the VE's testimony was consistent with the information contained in the *Dictionary of Occupational Titles* ("DOT")[3]; and that the ALJ therefore concluded that Plaintiff was not "disabled" within the context of the Social Security Act. [R643].

---

[3]    U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991).

18

## V.   CLAIMS OF ERROR

Plaintiff contends that the ALJ committed two reversible errors, which caused

the decision of non-disability not to be supported by substantial evidence:

> 1.      The ALJ failed to reconcile direct conflicts between his RFC and
> his Step Five finding as to Plaintiff's reaching ability.
>
> 2.      The ALJ did not evaluate barriers to treatment—specifically,
> Plaintiff's poverty—that might excuse noncompliance.

[Doc. 18 at 21-28].  The Court shall address each argument in turn.

### A.   *Reaching Ability*

In the hearing held on August 12, 2015, the ALJ  asked the VE about the

working abilities of a hypothetical individual of Plaintiff's age, education, and work

experience, who is able to perform a range of light work, but is limited by, among other

things, only occasional overhead reaching with the right upper extremity and no

overhead reaching with the left upper extremity.  [R699-700].  The VE testified that the

person could work as an advertising material distributor (DOT 230.687-101, light,

45,000 jobs in nation / 1,700 jobs in state), an escort vehicle driver (DOT 919.663-022,

light, 19,000 positions in nation / 900 jobs in state), and a marker (DOT 209.587-034,

light, 270,000 jobs in nation / 8,300 jobs in state).  [R700-01].  As noted above, the ALJ

19

relied on the testimony in determining that there was representative work Plaintiff was capable of performing.  [R643].

Plaintiff contends that the ALJ's decision is not based on substantial evidence because the ALJ failed to identify and resolve conflicts between the VE's testimony and the DOT's companion publication, the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO").[4]  [Doc. 18 at 21-25; Doc. 20 at 2-3].  Plaintiff refers to Social Security Ruling ("SSR") 00-4p, which states that when there is an apparent unresolved conflict between VE testimony and the DOT, the ALJ must elicit a reasonable explanation for the conflict before relying on the testimony; that "[t]he adjudicator will explain in the determination or decision how he or she resolved the conflict"; and that "[t]he adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified."   SSR 00-4p, 2000 WL 1898704 at *2, *4.  Specifically, Plaintiff argues that the ALJ's finding that Plaintiff could only occasionally overhead reach with the right upper extremity and never with the left upper extremity, [R631], is in direct conflict with the jobs identified by the VE, [R700-01], because the SCO states that the jobs require "frequent reaching,"

_____

[4]        U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993).

20

SCO at 347, 93, 98, and "reaching" is defined in the Rulings as "extending of the hands and arms in any direction," SSR 85-15, 1985 WL 56857 at *7; that because Plaintiff's overhead reaching was limited, he could not frequently reach in any direction and the VE testimony was thus "clearly in error"; that the ALJ did not resolve the conflicts; and that the ALJ therefore did not meet his burden at Step Five, pursuant to SSR 00-4p, to resolve the conflicts between the DOT/SCO and the VE testimony upon which he relied.  [Doc. 18 at 21-25 (analogizing the instant case to *Davis v. Colvin*, Civ. Action No. 12-00679-B, 2014 WL 1315650, at *6 (S.D. Ala. Mar. 28, 2014), and *Jefferson v. Astrue*, No. 2:11-CV-840-TFM, 2012 WL 4378584, at *7 (M.D. Ala. Sept. 25, 2012)); Doc. 20 at 2-3 (analogizing *Davis*, *id*.; *Jefferson*, *id*.; and *Cox v. Astrue*, Civ. Action No. 1:11CV519-WC, 2012 WL 2445067, at *4 (M.D. Ala. June 27, 2012))].  Plaintiff explains that this is particularly important here because the Social Security Administration has warned that limitations in reaching " 'may eliminate a large number of occupations a person could otherwise do.' "  [Doc. 18 at 25 (quoting SSR 85-15, 1985 WL 56857 at *7)].

The Commissioner responds that the VE's testimony is substantial evidence that Plaintiff can work.  [Doc. 19 at 6-10].  First, she argues that the DOT does not conflict with the VE testimony because the DOT does not specify that any of the jobs require

21

overhead reaching.  [*Id*. at 7].  Second, she contends that even if the DOT did specify that all of the jobs entailed frequent bilateral overhead reaching, there still would not be a conflict because the DOT lists the *maximum* requirements of occupations as they are generally performed and, unlike VE testimony, is not tailored to describe the requirements of a particular job as it is performed in specific settings.  [Doc. 19 at 7-8 (citing SSR 00-4p; *Fenton v. Apfel*, 149 F.3d 907, 911 (8th Cir. 1998); *Warren v. Colvin*, Civ. Action No. 1:12-cv-830-CSC (WO), 2014 WL 1152832, at *13 (M.D. Ala. Mar. 21, 2014); *Romine v. Barnhart*, 454 F. Supp. 2d 623, 626-27 (E.D. Tex. 2006); *Lipson v. Barnhart*, 347 F. Supp. 2d 1182, 1188-89 (M.D. Ala. 2004))].  Third, the Commissioner argues that under Eleventh Circuit precedent, even if there were an actual conflict, the ALJ was entitled to rely on the VE testimony because the VE testified that his testimony was consistent with the DOT, Plaintiff's counsel did not challenge the VE testimony, and "common sense" suggests that none of the representative occupations would require the person to perform the job with his hand above his head, and thus the conflict was not sufficiently "apparent" to trigger the ALJ's duty under SSR 00-4p to elicit a reasonable explanation for the conflict.  [Doc. 19 at 8-10 (citing *Hurtado v. Comm'r of Soc. Sec*., 425 Fed. Appx. 793, 796 (11th Cir. Apr. 25, 2011); *Jones v. Comm'r of Soc. Sec*., 423 Fed. Appx. 936, 939

22

AO 72A
(Rev.8/8
2)

& n.4 (11th Cir. Apr. 19, 2011); *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999);

*Farmer v. Colvin*, Case No. 3:14-cv-1071-J-MCR, 2015 WL 6769509, at *2 (M.D. Fla.

Nov. 6, 2015); *Sommers v. Colvin*, No. 5:14-cv-163, 2015 WL 4633516, at *13

(N.D. Fla. Aug. 3, 2015); *Gibson v. Astrue*, Civ. Action File No. 1:09-cv-677-AJB,

2010 WL 3655857, at *14-15 (N.D. Ga. Sep. 13, 2010) (Baverman, M.J.)].   The

Commissioner contends that for these reasons the ALJ properly relied on VE testimony

in response to his hypothetical.  [Doc. 19 at 10].

After careful consideration of the issue, the undersigned is persuaded that the

Commissioner did not reversibly err by relying on the VE's testimony.  First, the Court

is not persuaded that there was a discrepancy between the VE's testimony and the

DOT/SCO; rather, the VE's testimony appears to be a permissible refinement of the

generalized information appearing in the DOT/SCO.  It is true, as Plaintiff points out,

that the SCO indicates that "frequent reaching" is generally present in the occupations

of advertising material distributor, escort vehicle driver, and marker.  SCO at 93, 98,

347, & App. C-3.  The SCO defines the "reaching" component broadly: "Extending

hand(s) and arm(s) in any direction."  *Id*., App. C-3, ¶ 8.  The Agency recognizes that

"reaching," under that definition, is "required in almost all jobs," and that "[s]ignificant

limitations of reaching . . . therefore[] may eliminate a large number of occupations a

AO 72A
(Rev.8/8
2)

person could otherwise do."  SSR 85-15, 1985 WL 56857 at *7.  The Agency also recognizes, however, that "[v]arying degrees of limitations would have different effects" and that the assistance of a vocational specialist therefore may be needed to determine the effects of the limitations.  *Id*.  The Agency further recognizes that "[t]he DOT lists maximum requirements of occupations as generally performed" and that a VE "may be able to provide more specific information about jobs or occupations than the DOT."  SSR 00-04p, 2000 WL 1898704 at *3.  Where an ALJ does solicit evidence from a VE about the requirements of an occupation, the Rulings provide that he "has an affirmative responsibility to ask about any possible conflict between that . . . evidence and information provided in the DOT," and, "[i]f the VE's . . . evidence appears to conflict with the DOT," the ALJ must "obtain a reasonable explanation for the apparent conflict."  SSR 00-4p, 2000 WL 1898704, at *4.

Here, the ALJ did just what SSR 85-15 and SSR 00-04p direct.  Before the ALJ posed any hypothetical questions to the VE, the ALJ stated that he would assume that the VE's testimony was based on the VE's knowledge, education, training, and experience and was consistent with the DOT unless the VE told him otherwise.  [R699].  The VE said, "Yes, sir."  [R699].  The ALJ then posed a question to the VE that contained the reaching limitations (only occasional overhead reaching with the right

24

upper extremity and no overhead reaching with the left upper extremity), and the VE determined that there were jobs available for a person with those limitations (advertising material distributor, escort vehicle driver, and marker).  [R699-701].  In the course of answering subsequent questions, the VE explained that certain aspects of his testimony, such as his identification of the occupation of escort vehicle driver as "light" work, conflicted with the DOT, but he did not provide any such indication with regard to his testimony about the reaching requirements involved in the work of an advertising material distributor, escort vehicle driver, or marker.   [R699-701]. Plaintiff's attorney was at the hearing and stated that he had no objection to the VE's testifying as an expert.  [R699-702].  Plaintiff's counsel was also invited to—and did—question the VE, but he did not raise the issue of any conflict between the DOT/SCO and the VE's testimony that a person with the reaching limitations set forth in the ALJ's hypothetical question would be capable of performing the representative occupations the VE recited.  [R702].

Based on this record, the Court finds that in compliance with SSR 85-15 and SSR 00-04p, the ALJ properly solicited VE testimony to receive more specific information about occupations and occupations requirements described in the DOT/SCO and affirmed with the VE that his testimony was not in conflict with the

AO 72A
(Rev.8/8
2)

DOT, and while the ALJ explicitly provided Plaintiff's counsel the opportunity to ask the VE additional questions, he did not point out any conflicts between the DOT or raise any objections.   Because the VE's testimony indicated that there was no inconsistency, and Plaintiff's counsel did not question the VE about any possible inconsistency, the ALJ need not have proceeded to elicit an explanation for any conflict or resolve a conflict.   *See, e.g., Smith v. Astrue*, 2014 WL 1092761, at *7 (N.D. Ala. Mar. 19, 2014) (explaining that a limitation on overhead activities "would not be a significant limitation on all reaching as to significantly reduce the sedentary occupational base," as SSR 85-15 "define[s] reaching as extending hands and arms in *any* direction and stat[es that] *significant* limitations of reaching may eliminate a large number of occupations") (emphasis in *Smith*); *Crooker v. Apfel*, 114 F. Supp. 2d 1251, 1257 (S.D. Ala. 2000) (SSR 85-15 states only that "[s]ignificant limitations of reaching . . . may eliminate a large number of occupations a person could otherwise do.  Far from mandating a finding of disability, SSR 85-15 expressly states that "the assistance of a VS [vocational specialist] may be needed to determine the effects of the limitations."). The Court therefore finds that there was no "apparent" conflict that would give rise to error under SSR 00-04p and thus finds no basis for reversal.

AO 72A
(Rev.8/8
2)

Second, even assuming there is an inconsistency between the VE's testimony and the DOT, Eleventh Circuit precedent provides that the ALJ did not reversibly err by relying on the testimony. In *Jones v. Apfel*, the Eleventh Circuit held in late 1999 that "VE testimony 'trumps' the DOT" because the DOT itself states that it is not comprehensive and because the Code of Federal Regulations states that the DOT is one of a number of sources of which it will take administrative notice, thus indicating that the DOT is not dispositive. *Jones*, 190 F.3d at 1230. It is true, as Plaintiff's unpublished district-court cases note, that subsequent to *Jones*, the Agency issued SSR 00-04p (Dec. 4, 2000), which provides, among other things, that "[n]either the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict" and that "[t]he adjudicator must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information," SSR 00-04p, 2000 WL 1898704 at *2, and that subsequent to the issuance of SSR 00-04p, the Eleventh Circuit stated in *Leonard v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 298, 301 (11th Cir. Jan. 19, 2011), that SSR 00-04p requires that "the ALJ must elicit a reasonable explanation for the conflict before relying on the VE's testimony." *Davis*, 2014 WL 1315650 at *5; *Jefferson*, 2012 WL 4378584 at *5).

27

It bears noting, however, that Plaintiff's argument rests on non-binding authority. Each of the cases Plaintiff cites is an unpublished district-court opinion and thus is of only persuasive value. *See United States v. Izurieta*, 710 F.3d 1176, 1179 (11th Cir. 2013) (quoting 11th Cir. R. 36-1, IOP 6 ("Citation to Unpublished Opinions by the Court.  The court generally does not cite to its 'unpublished' opinions because they are not binding precedent."); *Fishman & Tobin, Inc. v. Tropical Shipping & Const. Co., Ltd.*, 240 F.3d 956, 965 (11th Cir. 2001) (providing that district-court opinions are not binding); *Fox v. Acadia State Bank*, 937 F.2d 1566, 1570 (11th Cir. 1991) (same). Similarly, Social Security Rulings are published under the authority of the Commissioner of Social Security, and while they are binding on all components of the administrative process, *see Sullivan v. Zebley*, 493 U.S. 521, 530 n.9 (1990); *see also Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1377 n.6 (N.D. Ga. 2006) (Story, J.) (citing 20 C.F.R. § 402.35(b)(1)), they do not have the force of law, *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.6 (9th Cir. 2007); *see also Salamalekis v. Comm'r of Soc. Sec.*, 221 F.3d 828, 832 (6th Cir. 2000) ("If a Social Security Ruling presents a reasonable construction of an ambiguous provision of the Act or the agency's regulations, we usually defer to the SSR."); *Minnesota v. Apfel*, 151 F.3d 742, 748 (8th Cir. 1998) ("Social Security Rulings, although entitled to deference, are not binding or

28

conclusive."); *Pass v. Chater*, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995); *Gordon v. Shalala*, 55 F.3d 101, 105 (2d Cir. 1995); *Andrade v. Sec'y of Health and Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993).  Moreover, the *Leonard* opinion did not establish SSR 00-04p as binding upon courts in this Circuit because *Leonard* did not reverse an adverse decision due to an ALJ's failure to comply with SSR 00-04p but instead merely found in the course of *affirming* the decision of the Commissioner that the ALJ had met the requirements of SSR 00-4p; in other words, it was not necessary for the court to determine that SSR 00-04p was binding in order for the Court to dispose of the case, and thus any discussion that could be interpreted to opine on the binding effect of SSR 00-4p is merely dicta.  *See Leonard*, 409 Fed. Appx. at 301.  Additionally, *Leonard* is also an unpublished opinion and is thus incapable of abrogating *Jones*, and the Eleventh Circuit has continued in subsequent opinions to rely on *Jones*'s holding that an ALJ is entitled to rely on vocational expert testimony even when it conflicts with the DOT.  *See, e.g., Thomas v. Comm'r of Soc. Sec.*, 497 Fed. Appx. 916, 921 (11th Cir. Nov. 19, 2012) ("An ALJ can rely on a vocational expert to supplement the information in the Dictionary of Occupational Titles and where the two conflict the vocational expert's testimony 'trumps.' ") (citing *Jones*, 190 F.3d at 1229-30); *Leigh v. Comm'r of Soc. Sec.*, 496 Fed. Appx. 973, 975

AO 72A
(Rev.8/8
2)

(11th Cir. Nov. 14, 2012) ("Even assuming that there was an inconsistency between the VE's opinion and the DOT, the ALJ did not err in relying on the VE's opinion to determine that Leigh was not disabled.") (citing *Jones*, 190 F.3d at 1229-30); *Hurtado*, 425 Fed. Appx. at 796 ("[T]he ALJ did not err by relying on the VE's testimony because it 'trump[ed]' any inconsistent provisions of the DOT.") (citing *Jones*, 190 F.3d at 1229-30); *see also, e.g., Farmer*, 2015 WL 6769509 at *2; *Sommers*, 2015 WL 4633516 at *13; *Warren v. Colvin*, Civ. Action No. 1:12-cv-830-CSC (WO), 2014 WL 1152832, at *13 (M.D. Ala. Mar. 12, 2014) (noting that the Eleventh Circuit has held that reliance on the DOT is strictly within the discretion of the ALJ and "an ALJ may rely solely on the VE's testimony," even where the VE's testimony conflicts with the DOT) (citing *Jones*, 190 F.3d at 1230); *Gibson*, 2010 WL 3655857 at *14-15.

For all of these reasons, the undersigned finds no basis for reversal arising from the ALJ's reliance on the VE's testimony indicating that a person limited to occasional overhead reaching with the right upper extremity and no overhead reaching with the left upper extremity is capable of performing the work of an advertising material distributor, an escort vehicle driver, or a marker.

**B.    *Access to Treatment***

Plaintiff also contends that the Commissioner's decision should be reversed because the ALJ repeatedly diminished Plaintiff's credibility based on his noncompliance with treatment but did not adequately evaluate whether Plaintiff's poverty caused him to lack meaningful access to medical treatment. [Doc. 18 at 25-28]. He points to SSR 82-59, which provides that "[w]here the treating source has prescribed treatment clearly expected to restore ability to engage in . . . gainful activity, . . . but the disabled individual is not undergoing such treatment, appropriate development must be made to resolve whether the claimant . . . is justifiably failing to undergo the treatment prescribed," and that the claimant should be given an opportunity to fully express why he is not following prescribed treatment, SSR 82-59, 1982 WL 31384 at *2, and he also points to SSR 96-7p, which provides that "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to . . . pursue regular medical treatment without first considering any explanation that the individual may provide, or other information in the case record, that may explain" the failure, SSR 96-7p, 1996 WL 374186 at *7.  [Doc. 18 at 25-28 (citing *Palmer v. Colvin*, No. 5:15-CV-132-CAR-CHW, 2016 WL 1483516, at *9 (M.D. Ga. Mar. 23, 2016) (R&R) (explaining that where the record does not contain

31

substantial evidence concerning a claimant's "optimal or preferred course of treatment" and the record suggests that she "lacked meaningful medical access," an ALJ errs in determining that the claimant's conservative course of action discredited her allegations), *adopted at* 2016 WL 1465370 (M.D. Ga. Apr. 14, 2016); *Simpson v. Colvin*, Civ. Action No. 14-00288-N, 2015 WL 3447880, at *7 (S.D. Ala. May 29, 2015) (explaining that where an ALJ's finding is "inextricably tied to the finding of noncompliance," the ALJ errs by failing to consider the claimant's ability to afford treatment); *Anderson v. Astrue*, No. 8:11-cv-234-T-24MAP, 2012 WL 570951, at *4 & n.5 (M.D. Fla. Feb. 3, 2012) (same) (R&R), *adopted at* 2012 WL 570055 (M.D. Fla. Feb. 22, 2012); and *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("[P]overty excuses noncompliance."))].  He points out that the record shows that Plaintiff received diagnoses of PTSD, depressive disorder, and provisional personality disorder, [R1567 (June 1, 2012, chronic PTSD, depressive disorder); R1569 (Apr. 6, 2012, severe PTSD); R1573 (Apr. 6, 2012, PTSD symptoms, depressed mood); R1879 (Feb. 18, 2015, major depressive disorder, recurrent, mild, with medication, unspecified personality disorder, provisional)], and that he suffered poverty, [R610-11 (June 2016 request that claim be expedited due to Plaintiff's "extreme financial situation," further stating that Plaintiff had unpaid hospital bills,

32

medication he could not afford, and appointments for which he had no transportation, and that he felt, "The next move is to kill myself"); R666 (Plaintiff's August 2015 testimony that he had no medical insurance and was incapable of completing an "Obamacare" application without help); R977 (earnings of $56 in 2008 and no earnings from 2009 through 2015); R1877 (homeless from 2010 through at least early 2015); R1904 (homeless in October 2014)], and he contends that the ALJ's finding of non-disability is "plainly inextricably linked" to his noncompliance because the ALJ referred to "noncompliance" or "sporadic" treatment at least ten times in his decision, [R632-42].  [Doc. 18 at 27].

Here again, the undersigned is not persuaded that the ALJ committed reversible error.  There can be little question that the Commissioner was presented evidence of Plaintiff's poverty, [*see, e.g.*, R610-11, 666, 977, 1877, 1904], and that the ALJ did repeatedly mention noncompliance and sporadic treatment, both while simply reciting the content of Plaintiff's medical records, [*see, e.g.*, R632-42], and within the context of the credibility analysis, [*see, e.g.*, R636 (noting that Plaintiff admitted that he only experienced chest pain when he was not consistent with medication use); R638 (noting that Plaintiff reported improvement in his depressive symptoms, paranoia, and PTSD with medication); R640 (noting that with regard to memory and focus issues, the record

33

showed that Plaintiff "sporadically sought treatment and was not consistently on medication")].  However, the cases Plaintiff seeks to analogize to his own support his position only so far as the ALJ's decision here can be read to rely heavily on underdeveloped noncompliance findings:  in *Dawkins*, the ALJ discounted the claimant's credibility on grounds that the claimant's testimony was "inconsistent with the findings of her attending physicians" and identified the claimant's noncompliance with prescribed treatment as the *only* inconsistency, *Dawkins*, 848 F.2d at 1214; in *Anderson*, the court similarly reversed the decision and remanded the case to the Commissioner on grounds that the ALJ's determination of non-disability "relied primarily on Plaintiff's noncompliance, a finding that [wa]s not supported by substantial evidence," *Anderson*, 2012 WL 570951 at *4 & n.5; in *Palmer*, the court explained that the ALJ could not summarily dismiss the plaintiff's credibility on grounds that her allegation that she could not afford rigorous courses of treatment conflicted with evidence that she had 200 dollars per month available for discretionary spending, as the ALJ had not developed the record regarding Plaintiff's optimal or preferred course of treatment and the cost of that treatment, *Palmer*, 2016 WL 1483516 at *9; and in *Simpson*, the court *affirmed* the Commissioner's decision of non-disability, despite the ALJ's failure to consider the claimant's testimony that her lack

AO 72A
(Rev.8/8
2)

of resources prevented her from obtaining her medications, because "other valid reasons, supported by substantial evidence, [were] present," *Simpson*, 2015 WL 3447880 at *7 (relying on *Brown v. Comm'r of Soc. Sec.*, 425 Fed. Appx. 813, 817 (11th Cir. Apr. 27, 2011) ("[I]f the claimant's failure to follow medical treatment is not one of the principal factors in the ALJ's decision, then the ALJ's failure to consider the claimant's ability to pay will not constitute reversible error.")).  Binding Eleventh Circuit authority also distinguishes cases like *Dawkins*, where "the record contains evidence showing that the claimant is financially unable to comply with prescribed treatment" and the ALJ's adverse decision relies "'primarily if not exclusively' on evidence pertaining to the claimant's noncompliance with prescribed medical treatment," from cases where the determination that the claims was not disabled "was not significantly based on a finding of noncompliance." *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (finding no reversible error where the ALJ noted records of the claimant's noncompliance but based his decision of non-disability on testimony of a VE, the claimant's residual functional capacity, age, educational background, and work experience).

Here, the ALJ's decision shows—like the ALJ decisions in *Simpson*, *Brown*, and *Ellison*, and unlike the ALJ decisions in *Dawkins*, *Anderson*, and *Palmer*—that the

35

credibility decision was based on far more than an underdeveloped record of noncompliance. The ALJ's decision indicates that he was aware of Plaintiff's financial situation, as the ALJ expressly recognized that Plaintiff was living with friends, qualified for food stamps, and was receiving medical care at Grady. [R631, 633, 639, 641, 642]. The decision also shows that the ALJ's credibility determination did not merely rely on Plaintiff's history of noncompliance but was also informed by inconsistencies in Plaintiff's testimony, his doctors' findings of malingering and exaggerated symptoms, and medical notes and opinions indicating mild problems: the ALJ explained that he found Plaintiff's asthma non-severe because medical records described the asthma as "not really supported by the record" and showed that Plaintiff had not had an asthma attack since early 2011, [R628]; he found Plaintiff's diabetes non-severe because notes showed that Plaintiff was diagnosed in January 2014 and the diabetes was under control by the end of that same year, [R628]; he found Plaintiff's hypertensive renal disease to be non-severe because it was described as asymptomatic in a December 2010 medical interrogatory, [R628]. The ALJ found Plaintiff's allegations of disabling physical symptoms less than fully credible because recent records indicated that his cardiovascular issues were stable; an x-ray study from 2012 of Plaintiff's right shoulder did not reveal abnormalities; Dr. Besses opined in

36

March 2012 that Plaintiff's reports to her that he was essentially incapable of performing any household or self-care tasks were a "gross underestimate" of Plaintiff's functional capabilities; Plaintiff stated in December 2012 that he was fully independent with his activities of daily living and was able to play outside with his children; he denied chest pain and shortness of breath during a January 2014 evaluation; no cardiovascular testing was recommended after January 2014; notes from May 2014 indicate that his left ventricular function had recovered and he was able to walk two to three blocks without any issues; emergency-room notes indicate that Plaintiff's chest pain was not cardiac related and that cocaine use could be the cause of the pain; there were no medical records that corroborated Plaintiff's testimony of dizziness and headaches related to hypertension; recent records showed that Plaintiff reported extensive relief from pain and symptoms in his left shoulder after occupational therapy; Plaintiff's most recent consultative examination indicated no objective signs of limitation in the left shoulder besides some mild arthritis; there was little objective evidence to support Plaintiff's complaints of back and knee pain; there was no record of an inability to ambulate effectively; records showed only mild degenerative changes; Dr. Wood noted "fairly extreme symptom exaggeration regarding his physical limitations," found complaints of pain to be exaggerated, and found minimal

37

degenerative osteoarthritis of the cervical spine and mild degenerative arthritis of the left shoulder during a consultative examination taking place in February 2015; Dr. Wood opined that Plaintiff should be able to do between light and medium work; and Plaintiff reported to Dr. DeGroot in March 2015 that he could dress himself, vacuum the rugs, and use public transportation, [R629, 636-37, 640]. The ALJ found Plaintiff's allegations of mental limitations less than fully credible because Plaintiff's treatment records indicated that his depression was found to be mild initially and related to the death of his mother; Plaintiff's PTSD diagnosis was based solely on Plaintiff's own reports; neither Dr. Besses nor Dr. DeGroot found Plaintiff's symptoms to fit the definition of PTSD; there was no indication of stress when Plaintiff discussed past traumatic events; Plaintiff was not observed to show outward signs of PTSD; Dr. DeGroot opined that Plaintiff's paranoia appeared to be depression-related rather than PTSD-related; Plaintiff was unable to specifically describe his alleged hallucinations; Plaintiff was not observed to be responding to any outside stimuli that could indicate hallucinations; no delusions were noted; Dr. Besses opined that Plaintiff had sufficient ability to interact with co-workers and supervisors; and Drs. DeGroot and Besses opined that Plaintiff had no significant memory impairments, was able to follow simple instructions, had good judgment and insight, had no more than the moderate

AO 72A
(Rev.8/8
2)

restrictions in concentration, persistence, and pace, and was exaggerating his symptoms.   [R629-30, 640-42].   The ALJ also generally observed that Plaintiff's credibility was questionable because he made inconsistent statements with regard to cocaine use; Dr. Wood described exaggerated complaints of pain; Dr. Besses described Plaintiff as uncooperative and exaggerating his symptoms; and Dr. DeGroot noted that Plaintiff was not putting forth his best effort.   [R636-37, 640].   Plaintiff does not challenge the ALJ's reliance on any of these findings.   [*See* Docs. 18, 20, *passim*].

Given this extensive and detailed reasoning provided by the ALJ, it is clear that the ALJ had numerous reasons for discounting Plaintiff's credibility and that the ALJ's decision therefore was not "inextricably linked" to Plaintiff's noncompliance. Consequently, the undersigned concludes that any error in considering Plaintiff's noncompliance was harmless.   *See Brown*, 425 Fed. Appx. at 817; *Ellison*, 355 F.3d at 1275.

## VI.   CONCLUSION

For the reasons set forth above, the undersigned United States Magistrate Judge **RECOMMENDS** that the District Judge **AFFIRM** the final decision of the Commissioner.

The Clerk is **DIRECTED** to terminate the reference to the undersigned.

AO 72A
(Rev.8/8
2)

**IT IS SO RECOMMENDED and DIRECTED**, this the __25th__ day of January, 2018.

_____
ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/8
2)